**Robert L. HERRING, Petitioner,**

v.

**W.D. BLANKENSHIP, Warden,
Respondents.**

**Civ. A. No. 86–0149–B.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

May 29, 1987.

---

Stephen A. Saltzburg, University of Virginia, Law School, Charlottesville, Va., for petitioner.

Linwood T. Wells, Asst. Atty. Gen., Richmond, Va., for respondents.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Robert L. Herring, a Virginia prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 attacking the judgment of conviction for first degree murder entered by the Circuit Court for Lee County on October 23, 1981 for which he was sentenced to serve twenty years in the state penitentiary. As grounds for relief, petitioner makes the following allegations:

1. The trial judge denied petitioner due process of law and the right to a fair trial on the grounds substantiated by affiavit evidence that the jury foreman had been promised favors if he would find petitioner guilty and that those promises influenced the foreman during his deliberations concerning the guilty (sic) or innocence of petitioner.

2. Failure of trial counsel to make timely objection at state court hearing, that the trial judge abused his discretion by not conducting a thorough inquiry into the jury foreman's allegations after the foreman invoked the Fifth Amendment not to testify at state hearing, deprived petitioner of effective assistances of counsel.

3. Trial counsels' refusal to ask the trial court immunity for the jury foreman, so that allegations contained in the juror's affidavits could be more thoroughly investigated, denied petitioner effective assistances of counsel.

4. Trial court's refusal to conduct a thorough inquiry to determine exactly what occurred after the jury foreman invoked the Fifth Amendment not to testify to allegations collated (sic) in his affidavits, that he was bribed to convict the petitioner, the trial court abused its discretion.

5. Trial court denied petitioner due process of law on grounds substantiated by affidavit evidence that the jury foreman was brib,ed by third party during the trial who promised favors if he

would find petitioner guilty and these promises influenced the foreman concerning guilt or innocence of petitioner.

6. Trial counsels' failure to put up a defense during petitioner's trial that Bernard Chester Webb was not the trigger-man in the murder for hire of David Hill after the Commonwealth raised the issue that Webb was the trigger-man after Webb was found innocent of the murder of David Hill denied petitioner a fair trial due to ineffective assistance of counsel.

7. Counsels' failure to clarify alleged co-conspirator's previous felony conviction denied petitioner due process of law and a fair trial.

8. Counsels' refusal to investigate and inquire into wiretap affidavit and raise all non-frivolous objections to search and seizure deprived petitioner of effective assistance of counsel.

9. Counsels' failure to call and exercise proper cross-examination of state witnesses Jim McKee, Rick Story and Danny MaHan that they could not identify Bernard Chester Webb as the alleged trigger-man denied petitioner effective assistance of counsel.

10. Counsels' failure to exhibit a picture of Larry Spivey in possession of trial counsels during petitioner's trial to Jim McKee and Danny MaHan denied petitioner of effective assistance of trial counsel.

11. Counsels' refusal to introduce the letter marked as Exhibit "B" into evidence at petitioner's trial through petitioner's testimony who received said letter through petitioner's business (Herco Corp.) which was part of the files and records of said business deprived petitioner of effective assistance of counsel when counsel did not lay a proper foundation.

12. Counsels' failure to raise First, Fourth, Fifth and Fourteenth Amendment claims that wiretap tap (sic) tape evidence and the Hill murder investigation was perverted by state and federal officials in an illegal scheme to silence petitioner about a Robert Vesco and Jimmy Carter relationship to a Federal Grand Jury deprived petitioner of effective assistance of counsel.

13. Counsels' failure to properly question Mr. Ralph E. Ulmer as to allegations that the obstruction of the Carter-Vesco Federal Grand Jury investigation inter-relates with the orchestrated handling of the Hill investigation by state and federal officials and the timely return of the Hill murder indictment against petitioner, Mr. Ulmer's testimony would have demonstrated that the Hill murder case was utilized by state and federal officials "with intent" to silence petitioner about the Carter-Vesco relationship and to cover-up these state and federal officials' illegal activities surrounding the Carter-Vesco matter deprive petitioner of effective assistance of counsel.

14. Petitioner's constitutional rights under the First, Fourth, Fifth and Fourteenth Amendment were violated when state and federal officials engaged in "outrageous" conduct by *perverting* the Hill murder case and indictment into a scheme for more than 3½ years "with intent" to silence petitioner about his knowledge of a Carter-Vesco relationship and cover-up of state and federal officials' illegal activities surrounding the Carter-Vesco relationship.

15. Petitioner was denied due process of law and a fair trial when the prosecutor knowingly used misleading testimony testimony (sic) of Jim McKee, that McKee could identify co-defendant Bernard Chester Webb as the same person who key prosecution witness Russell Cash testified was the alleged trigger-man in the murder of David Hill, when in fact the prosecution knew McKee could not identify Webb.

16. Petitioner was denied due process of law because his sentence has not been credited with time credits from the day of the jury verdict to present on sentence imposed by jury of twenty years.

Respondent, through counsel, moved to dismiss the petition on grounds that petition contained an unexhausted claim and was thus a "mixed petition." Respondent submitted evidence supporting his assertion that Claim 15 of the instant petition had not been presented to the Virginia Supreme Court either on direct appeal or in his post-conviction proceedings. Petitioner was allowed to amend his petition and to delete Claim 15. *See Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). Thereafter, respondent made a "Second Motion to Dismiss," and the state court records were submitted to the court. Petitioner was given notice of respondent's motion and was given an opportunity to submit relevant evidence explaining, contradicting or voiding respondent's evidence. Petitioner was further warned that failure to so respond may, if appropriate, result in dismissal of this petition. Petitioner has submitted his own affidavits, memoranda, and other materials in support of his claims.

## I

The first issue facing this court concerns petitioner's allegations in Claims 1, 4 and 5 that the trial court denied petitioner due process and the right to a fair trial and abused his discretion in refusing to conduct a thorough investigation into the affidavits by the foreman of the jury averring that he was bribed to find petitioner guilty. These three claims shall be considered together.

### A.

The record reflects the following to be the relevant facts pertaining to Herring's allegations in Claims 1, 4 and 5.

Petitioner was found guilty of first degree murder by a Lee County, Virginia, jury on October 23, 1981. Herring's court-appointed attorneys made a timely post-trial motion to set aside the verdict based, *inter alia,* on affidavits given by the foreman of the jury that he received calls during the trial promising him favors if he found Herring guilty. Pursuant to a bench ruling, the trial court scheduled a hearing on January 20, 1982 for the limited purpose of making an inquiry into the matters contained in the affidavits submitted by defense counsel. The affidavits were dated November 24, 1981 and December 7, 1981 and were signed by the juror and were notarized. The affidavits were marked as defendant's Exhibits 1 and 2 respectively. The trial court stated that the inquiry would only go so far as to determine whether any extrajudicial communications which the juror was alleged to have received were communicated to any of the other jurors. The court specifically warned that counsel was not to go into any aspect involving actual deliberations. (Criminal Trial, 1–20–82, pp. 2007–2008). This hearing was continued until February 4, 1982 so that the juror could confer with his attorney.

At the hearing, Herring's attorneys called the juror to the witness stand whereupon the following examination took place:

By Mr. Cridlin:

Q. Were you the foreman of the jury which heard and decided the case of the Commonwealth vs. R.L. Herring?

A. I was.

Q. After the trial, did you come to my office and offer any statement?

A. I decline to answer on the grounds that a truthful answer might tend to incriminate me.

Q. Would any question that I'd ask you in regard to a purported statement or affidavit, would your answer be the same to me as what you just gave me?

A. It would.

By Mr. Cridlin:

Your honor, we would not pursue, for obvious reasons, this line of questioning and would rest and rely on the affidavits that have been filed with this cause and entered into evidence at a previous hearing.

(Cr. Tr., 2–4–82, pp. 1896–97). The attorneys for the Commonwealth declined to cross-examine the witness. Thereafter, the court stated:

In view of the question and in view of the content of the affidavits that have been presented to me, it does appear that the witness has the right to invoke the

Fifth Amendment privilege personally, which he has done, and I would not direct him to answer the question.

(Cr. Tr. 4–2–82, pp. 1899).

Herring's attorneys asserted that the evidence before the court was sufficient to justify their position that the verdict should be set aside. Defense counsel further argued that they had met their burden of showing that there had been misconduct or irregularity of the jury by the affidavits presented to the court, and that the burden of proof was upon the State to show beyond a reasonable doubt that the prisoner had suffered no injury from the misconduct. (Cr. Tr. 4–2–82, p. 1901). The attorneys for the Commonwealth argued in response that the only evidence before the court was an affidavit which no one would admit to having signed, and that they had no way of going behind the affidavit to determine what, if any, facts exist. Counsel contended that even if the accusations in the affidavits were true, there had been no showing of prejudice and urged the court "to make a finding of fact that no prejudice had been shown in order to protect this verdict from being attacked in other proceedings." (Cr. Tr. 4–2–82, p. 1902–03).

In ruling on the motion to set aside the verdict as it pertained to the question of unauthorized contact with a juror, the court stated as follows:

> The court has before it ... an *ex parte* uncorroborated affidavit of one juror which indicates that an anonymous caller did make some improper suggestion to him during the trial of the case in an effort to influence the verdict of the jury.... The *affidavit does not indicate that the juror revealed to any other jurors anything that had occurred or that the jury was influenced in its verdict by what had taken place*; in fact, at least one just the bare affidavit would suggest that no other jurors had any information insofar as what had allegedly transpired between the juror and this anonymous caller ...
>
> ... I am of the opinion that an *ex parte uncorroborated affidavit of one*

*juror should not even be received by the Court to upset a jury verdict.* The Court initially ruled that the affidavit was sufficient for the Court to receive it for the purposes of justifying another inquiry as to what had taken place ... *So I am of the opinion that the affidavit itself should not even be received by the Court and considered in regard to any effort to overturn the verdict ...*

> I am of the opinion that if it were properly received, that the will of the jury should not be so tenuous as to be able to be set aside on an *ex parte* uncorroborated affidavit of this type, a post-trial revelation of one juror, *without some showing that the alleged influence upon that juror affected the verdict* in some way, and *there is nothing to indicate that it did have that effect or in any way prejudice the verdict of the jury* ... Accordingly, I am overruling the motion to set aside the verdict on that ground. (Emphasis added.)

(Cr. Tr. 2–4–82, pp. 1914–17).

### B.

■ The Sixth Amendment right to trial by jury guarantees to the criminal defendant "a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). To safeguard this right, the courts conduct *voire dire* to root out any intrinsic bias against the defendant, issue protective instructions to the jury and, when appropriate, sequester the jury for the duration of the trial. It is recognized that there are instances when these measures may fail and the jurors may be exposed to unauthorized, extrajudicial communications or influence. In a situation in which a trial court is faced with allegations of juror misconduct or unauthorized communications with jurors, the court has a duty to investigate the allegations. *See Haley v. Blue Ridge Transfer Co.,* 802 F.2d 1532, 1535 (4th Cir.1986); *United States of Shackleford,* 777 F.2d 1141, 1145 (6th Cir.1985). *See also Aston v. Warden,* 574 F.2d 1169, 1171–1172 (4th Cir.1978).

The Supreme Court in *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450,

451, 98 L.Ed. 654 (1954), was faced with a situation similar to the case *sub judice.* In *Remmer,* a federal juror was approached during trial by someone offering money in exchange for a favorable verdict. The juror reported the incident to the judge. An FBI Agent was assigned to investigate. His report was revealed only to the judge and prosecution. The defense counsel learned about the incident after trial and moved for a mistrial. The motion was denied without a hearing. The Supreme Court, on a writ of certiorari, remanded it back to the district court with instructions for the court to hold a hearing. The Court opined that the trial court should not decide and take final action *ex parte* on information such as was received in this case, but should "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial to defendant in a hearing with all interested parties permitted to participate." *Id.* at 230, 74 S.Ct. at 451. In reaching the decision, the Court drew from the principles set forth in *Mattox v. United States,* 146 U.S. 140, 148–150, 13 S.Ct. 50, 52–53, 36 L.Ed. 917 (1892), and stated:

> In a criminal case, *any private communication,* contact, or tampering, directly or indirectly, *with a juror during trial about a matter pending before the jury is,* for obvious reasons, deemed *presumptively prejudicial,* if not made in pursuance of known rules of court ... with full knowledge of the parties. The presumption is not conclusive, but the *burden rests heavily upon the Government to establish,* after notice to and hearing of the defendant, *that such contact with the juror was harmless to the defendant.* (Emphasis added.)

*Id.* 347 U.S. at 229, 74 S.Ct. at 451.

The Fourth Circuit Court of Appeals recently had the occasion to address a similar issue in the context of a civil case. In *Haley v. Blue Ridge Transfer Co., supra,* a nonjuror had mistakenly been seated with the jury panel, was sworn with the jury and remained with the other jurors during the first day of trial. The mistake was discovered at the end of the first day and the nonjuror was excused. After the trial, defense counsel discovered that the nonjuror had made prejudicial remarks about the case in the presence of the entire jury. Defense counsel obtained an affidavit from one of the regular jurors and attached it to a motion for a new trial. The district court held a post-trial evidentiary hearing and concluded that the nonjuror's remarks were harmless and had not adversely affected the verdict.

On appeal, the evidence before the Fourth Circuit consisted of the juror's affidavit and the reasoning set forth in the trial court's order denying the motion for a new trial.[1] The court disagreed in part with the trial court's analysis of the issues relating to the nonjuror's remarks. The first issue cited by the trial court was whether the juror's testimony was competent to impeach the verdict pursuant to Rule 606(b), Federal Rules of Evidence.[2] The Fourth Circuit agreed with the trial court's finding that rule 606(b) did not bar the juror's testimony. The second issue set forth by the trial court was whether the juror's affidavit established that the nonjuror's remarks were prejudicial. The Fourth Circuit disagreed with the court's framing of this issue. The Fourth Circuit made clear that once the trial court had found that the affidavit was competent evidence, it erred by not "invoking the *Remmer* presumption that the nonjuror's comments prejudicially affected the jury's verdict." The court further stated that once

---

1.  As noted by the court, it was unclear from the records whether the trial court received live testimony from the juror or whether it merely considered the juror's affidavit.

2.  Rule 606(b), Federal Rules of Evidence provides in part:

    Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions ... or concerning his mental processes, ... except that a juror may testify on the question of whether extraneous information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

this presumption was invoked, the trial court should have gone on to consider whether plaintiff's evidence rebutted this presumption of prejudice. *Haley*, at 1536–37.

In reviewing federal and state case law, the court "found nothing in post *Remmer* Supreme Court decisions that limits the federal district court's obligation to invoke the presumption of prejudice when sitting jurors have been exposed to unauthorized, extraneous information that is of sufficiently prejudicial magnitude."[3] The court concluded that there was a "reasonable possibilty" that the jury's verdict was influenced by an unauthorized communication and that Haley, the plaintiff, had not presented evidence sufficient to carry his burden of rebuttal. This case was reversed and remanded for a new trial.

■ The following is a summary of the principles which are gleaned from the opinions in *Haley, Remmer* and *Mattox.* In cases where it is alleged that an unauthorized, extrajudicial contact or communication with a juror occurred during trial, the trial court has the duty to investigate the allegation and determine whether there may have been a violation of the right to trial by an impartial jury. An evidentiary hearing should be held, and the initial investigation should address the competency of the evidence being offered to impeach the verdict. If the evidence consists of a juror affidavit, it must be determined whether the affidavit relates solely to the conduct of a nonjuror or extraneous influence upon the juror or jury without reference to any phase of the deliberative process. When there is evidence that "extraneous prejudicial information was improperly brought to the jury's attention" or that "some outside influence was improperly brought to bear upon any juror," Rule 606(b) of the Federal Rules of Evidence permit the juror to testify as to these matters.[4] Generally, if it is determined that

the affidavit is competent evidence, a strong presumption of prejudice automatically arises for the party opposing the verdict. At this point, it would not be necessary for the moving party to call the affiant to testify about the communications or influence. The party supporting the verdict will bear the heavy burden of rebutting this presumption, and will be limited to producing evidence which shows that the unauthorized communication was harmless without going behind the verdict and into the jurors' mental processes. The trial court will necessarily be compelled to consider the inferences which may be drawn from the evidence offered to impeach the verdict and to make legal conclusions based on the presumptions and burdens arising from the evidence. If the court finds that there remains a reasonable possibility that the jury's verdict was influenced by the communication or material that improperly came before it, then the burden of proving that the jury communication was non-prejudicial has not been met and the court should order a new trial. *See Haley v. Blue Ridge Transfer Co., supra,* at 1538.

■ Thus summarized, a trial court is faced with a mixed question of fact and law when allegations of improper and unauthorized jury communications or contacts have been made. Reviewing courts are, therefore, not bound by the trial court's findings, and may accord different weight to the facts as found when applying the relevant legal standards.

■ Generally, federal courts exercising habeas corpus jurisdiction must defer to the state court's findings of fact, 28 U.S.C. § 2254(d). This presumption of correctness may be overcome only if the federal habeas court finds that the petitioner has established that one of the seven conditions specifically listed in § 2254(d) exists or that the relevant state court factual determination is not fairly supported by the record

---

3. As stated in *Haley,* the doctrine of presumed prejudice has been applied just as forcefully in federal civil cases as in criminal cases. *Haley, supra* at 1535. The analysis applied by the Court was based on the principles primarily drawn from *Remmer* and *Mattox.*

4. As the Court noted in *Haley,* there may be instances when the extrajudicial contact "amounts to nothing more than innocuous interventions that could not justify a presumption of prejudice." *Haley v. Blue Ridge Transfer Co., supra* at 1537, n. 9.

and there is convincing evidence that the state court finding was erroneous. *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

### C.

■ Upon review of the record, this court finds that there is sufficient evidence in the record to overcome the presumption of correctness generally accorded to state court findings with respect to petitioner having established that he did not receive a full, fair and adequate hearing on his motion to set aside the verdict. *See* 28 U.S.C. § 2254(d)(6). Specifically, the trial court failed to adequately investigate the allegations in the jury foreman's affidavit concerning unauthorized, extrajudicial communications by a third party during the trial and failed to invoke the appropriate legal presumptions warranted under the circumstances. Also, petitioner has established that he was denied due process of law in his post-trial evidentiary hearing as a result of this error. *See* 28 U.S.C. § 2254(d)(7). As stated above, the issue presents a mixed question of fact and law and federal habeas courts are not precluded by § 2254(d) when reviewing such mixed questions. *See Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480; *see also Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1700, 64 L.Ed.2d 333 (1980). Therefore, this court shall not be bound by the findings of the trial court relating to the affidavit of the jury foreman and the conclusions drawn from those findings.

The major flaws in the trial court's analysis of the evidence presented by defense counsel to support the motion to set aside the verdict were (1) the failure to properly determine the competency of the evidence offered to impeach the verdict, and (2) the failure to invoke the presumption that the nonjuror's communications with the jury foreman prejudicially affected the verdict.

Defense counsels' evidence was clearly competent to be offered as evidence to impeach the verdict. The affidavits described the contacts that had been made with the juror during the trial and the promises made to the juror by the nonjuror. The trial court's conclusion that the affidavits should not be received as evidence to overturn the verdict was based on the fact that the affidavits were *ex parte* and uncorroborated. The trial court greatly emphasized the lack of evidence corroborating the statements in the affidavits. Instead, the focus should have been on the fact that there were affidavits being offered to show that there had been unauthorized contact by a third party with a juror during the trial.

The trial court incorrectly inferred from the juror's refusal to testify that the affidavits were not sufficient evidence to justify further inquiry into what occurred. The fact that the juror refused to identify the affidavits and to testify about what occurred, if anything, should not have reflected on the competency of the affidavits as evidence to impeach the verdict. The evidence offered by defense counsel was sufficient by itself to raise a question as to the validity of the verdict and the defendant's right to a fair trial. The inferences which may be drawn from this evidence cast serious doubt, in the eyes of this court, on a juror's ability to render an impartial verdict.

The presumption that the nonjuror's communication with the juror prejudicially affected the verdict should have arisen automatically when defense counsel offered these particular affidavits. The burden of rebutting this presumption of prejudice should have been placed on the Commonwealth. The Court improperly determined that the burden of showing prejudice remained with defendant. The Court reasoned that without some showing, other than the affidavits, that the alleged influence on the juror affected the verdict in some way, the verdict should not be set aside. Had the proper legal standards been applied, the issue would have been whether there was any evidence to show that the contact had not taken place or that the influence on the juror was harmless and could not, at least inferentially, have affected the verdict.

The Commonwealth, unlike defense counsel, would not have been stymied in eliciting testimony from the juror about what had occurred. The Commonwealth could have granted immunity from prosecution to the juror pursuant to § 18.2–437, Code of Virginia.[5] This would have enabled the Commonwealth to offer evidence to show that the contact was harmless or innocuous. The record shows that the Commonwealth attorney recognized that the affidavits indicated that something significant did occur. However, rather than offering immunity from any possible charges which could arise from testifying, the Commonwealth urged the court to consider holding the witness in contempt. (Cr. Tr., 2–4–82, p. 1920).

### D.

Because there was a failure to properly determine whether the affidavits themselves were competent evidence to raise a question concerning the validity of the verdict and a failure to invoke the proper presumptions and burdens as called for under the circumstances, the court finds that defendant did not receive a full, fair and adequate post-trial evidentiary hearing, and was thus denied due process of law.

The question then arises whether this court should at this time grant a writ of habeas corpus to the petitioner or grant an evidentiary hearing to permit the Commonwealth to overcome the legal presumption created by the unauthorized, extrajudicial communication to the juror. In *Haley*, the Fourth Circuit granted a new trial without considering the possibility of remanding for a hearing, but *Haley* is a civil case. On the other hand, the Supreme Court in *Remmer*, a federal case, remanded the case to the District Court with instructions for a hearing.

The instant case is unique in many respects. In fact, no similar case is found in all the annals of jurisprudence.[6] The Lee County Circuit Court, faced with a most unusual situation, reacted by failing to exercise its power to grant immunity to the jury foreman.[7] The Commonwealth Attorney acted positively by moving the court to hold the witness in contempt, yet, failed to recognize the power of this office to immunize the witness by simply calling the juror as its witness. Furthermore, the court made no effort to ascertain whether or not the jury foreman was acting in good faith in taking the Fifth Amendment. It is difficult to see any potential crime of which the jury foreman could have been accused, unless he intended to recant to some extent the affidavits he had given to defense counsel or felt that he might be charged with perjury by changing his testimony. If so, perjury is one of the crimes for which immunity can be granted in Virginia simply by the act of calling the person as a witness for the Commonwealth. Code of Virginia, § 18.2–445. While immunity cannot be granted for every crime, it appears adequate for any possible crime involved in this case. The sanctity of the jury is too important to not use every means to search out the truth when such a bizarre set of facts are placed before the court as in this case. Immunity and contempt are the tools presented to the prosecution and the court to flesh out the truth in this case. There are perhaps other ways the Commonwealth may overcome the presumption of prejudice in this case, but it is not the duty of this court to spell them out to the Commonwealth.

---

5. Code of Virginia § 18.2–437.

   Immunity of witnesses—No witness called by the attorney for the Commonwealth, or by the court, and required to give evidence for the prosecution in a proceeding under this article shall ever be proceeded against for the offense concerning which he testified. Such witnesses shall be compelled to testify and may be punished for contempt for refusing to do so. (1982 Repl.Vol.)

6. How such a case could have escaped the perceptive eyes of the Virginia Supreme Court, which had never considered this issue, is noteworthy.

7. Bribery is another crime for which immunity can be granted in Virginia for the simple reason that in most instances, this crime can never be brought to light without testimony of one offering or receiving the bribe.

The court feels a hearing is necessary in this case to preserve the public interest in law and order. If the Commonwealth is unable to meet its burden at such hearing, it is forewarned that a writ of habeas corpus will be granted with a new trial to follow. An appropriate Order will be entered to carry out this opinion of the court and Robert L. Herring will be appointed new counsel to represent him at this hearing and any future proceedings pertaining to this case.

## II

### A.

The allegations in Claims 2, 3, 6–13 raise the issue of ineffective assistance of counsel. The legal standard for reviewing claims of ineffective assistance of counsel was articulated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this two-prong test, the reviewing court must determine (1) whether counsel's representation fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that but for counsels' unprofessional errors, the result of the proceeding would have been different. *Id.* at 689, 694, 104 S.Ct. at 2065, 2068. Petitioner bears the burden of rebutting the strong presumption that counsels' conduct was not within the wide range of reasonable professional conduct. Additionally, petitioner has the heavy burden of showing that he was prejudiced by counsel's conduct.

■ Petitioner alleges that counsel failed to make a timely objection during the post-trial hearing concerning the trial court's failure to conduct a thorough inquiry into the jury foreman's allegations and failed to ask the court to grant immunity for the juror so that his allegations could be thoroughly investigated. The record of the post-trial hearing clearly shows that Herring's attorneys acted reasonably. Counsel recognized that once the defense offered the affidavits that the burden of compelling further investigation into the facts was not upon the defense. Under the circumstances, defense counsel did all that was reasonably possible to bring to the court's attention the allegations of unauthorized juror contact. The failure to conduct a more thorough investigation was not due to any action or inaction on the part of defense counsel.

■ Petitioner next alleges that counsel failed to put up as a defense that Bernard Chester Webb, who was accused of being the trigger-man, had been found innocent of the murder of David Hill. Counsel has a duty to conduct an appropriate investigation and determine whether any investigation is necessary. *See Sneed v. Smith,* 670 F.2d 1348 (4th Cir.1982). *See also Strickland v. Washington, supra.* The record shows that Webb was called by the defense counsel and that he did deny killing Hill. (Cr. Tr. 1712–1714). Furthermore, the record of Herring's state court habeas hearing shows that defense counsel was fully aware of the Webb trial and had considered attempting to show as a part of Herring's defense that Webb had not killed Hill. (Habeas Corpus hearing, 4–26–85, p. 71). However, counsel stated that he could not make full use of this evidence on Herring's defense because the nature of Herring's trial differed from Webb's trial and because the court had limited both parties' mention of the Webb trial. (Habeas Corpus hearing, p. 72). It is clearly evident from review of the criminal trial transcripts and the transcript in the habeas proceeding that defense counsel investigated the possibilty of using Webb's acquittal as part of the defense and determined how this evidence could be used. Generally, courts do not second-guess tactics of trial lawyers. *Goodson v. United States,* 564 F.2d 1071, 1072 (4th Cir.1977). The court finds that defense counsel reasonably investigated the use of Webb's acquittal and that there is insufficient reason to second guess counsels' use of that evidence.

■ Petitioner's allegation, that counsel failed to clarify the alleged co-conspirator's previous felony conviction denied him a fair trial relates to the Commonwealth's cross-examination of Webb. Webb admitted to having been convicted of a prior felony.

However, in his next response to the Commonwealth's question, he denied having killed Hill. Petitioner has failed to show how counsels' failure to clarify Webb's response prejudiced him. As noted by the respondent, defense counsel testified during Herring's state habeas hearing that he did not delve into Webb's prior convictions because he had been convicted of manslaughter. (Habeas corpus hearing, 4–26–85, pp. 77–78).

■ In Claim 8, petitioner alleges that defense counsel failed to investigate wiretap affidavits and raise all non-frivolous objections relating to search and seizure. The record shows that counsel did object to the wiretap evidence. (Cr. Tr. 597–617). As stated earlier, matters of trial tactics are generally not second guessed by the courts. The court finds lack of sufficient prejudice to warrant further inquiry into defense counsels' tactics regarding the wiretap evidence.

The allegations in Claims 9, 10 and 11 are not supported by the record and fail to show sufficient prejudice to petitioner under the test set forth in *Strickland.*

■ Petitioner alleges in Claim 12 that counsel failed to raise the claim that the wiretap evidence and the Hill murder investigation were perverted by federal and state officials in order to prevent petitioner from testifying before a Federal Grand Jury about a Carter-Vesco relationship. The record shows that defense counsel talked with Herring about the wiretap tape evidence and elicited information from him about the accuracy of the tapes, and that counsel tried to sift through the information to find what information would be relevant to the charge against Herring. (Cr. Tr., 4–26–85, pp. 62–65). Upon review of the record, it appears that counsel acted reasonably in narrowing the scope of his defense to relevant issues which pertained to Herring's indictment. The court finds that counsel acted reasonably.

The allegations in Claim 13 are closely related to the allegations in Claim 12 and, for the same reasons cited above, fail to show that counsels' conduct in questioning Ralph Ulmer fell below an objective standard of reasonableness.

### B.

■ Petitioner alleges in Claim 14 that federal and state officials engaged in a scheme to silence him about his knowledge of a Carter-Vesco relationship and cover-up of state and federal officials' illegal activities surrounding the Carter-Vesco relationship. Petitioner has submitted several long affidavits in which he sets forth allegations of an "orchestrated" effort on the part of high ranking federal officials, federal investigative officials and agents, and state officials and investigative agents to pin the Hill murder on him. It is quite clear that the petitioner is convinced that someone tampered with, arranged or withheld evidence during the murder investigation. Herring's lengthy affidavits are intriguing, however, his allegations are not supported by evidence in the record and do not present grounds upon which this court could grant habeas corpus relief.

In as much as this claim may be construed as a challenge to the sufficiency of the evidence upon which petitioner was convicted, the rule in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) would apply. After a review of the state court records in a light most favorable to the Commonwealth, this court can find the essential elements of the crime beyond a reasonable doubt.

### C.

■ Lastly, petitioner alleges that he has been denied due process because his sentence does not reflect the amount of time he spent in jail immediately after the verdict. Petitioner seeks to have credit for time served upon a Federal sentence which he completed after he was convicted by the Lee County Circuit Court of first-degree murder. The record does not show that the trial court ordered his state sentence to run concurrently with any other state or federal sentence. In fact, the record shows that the court addressed the Federal sentence under which the petitioner was then serving time and found that there was

nothing to justify running the sentences concurrently. (Cr. Tr., 5–18–82 p. 2059). Clearly, petitioner is not entitled to adjustment of his sentence nor otherwise entitled to habeas corpus relief on this ground.

### III

In conclusion, the court finds that the allegations presented in Claims 1, 4 and 5 have merit, and that petitioner has shown that he is entitled to a new evidentiary hearing on the grounds stated herein. The remaining allegations are without merit and shall be dismissed.

An Order shall be entered this day accordingly.

In accordance with the written Memorandum Opinion entered this day, it is hereby

**ADJUDGED AND ORDERED**

that the petition for a writ of habeas corpus is denied on all grounds except claims 1, 4 and 5 of the petition; the court hereby orders a new evidentiary hearing in this court on claims 1, 4 and 5 and hereby appoints Steven A. Saltzburg, Esquire, as attorney to represent Herring in all future proceedings. Counsel shall move immediately to prepare for and expedite this hearing.

The clerk is directed to send certified copies of this Order and the accompanying Memorandum Opinion to petitioner, counsel for petitioner and respondent.