**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jerry GILLESPIE, Defendant–Appellant.**

No. 94–3525.

United States Court of Appeals,
Sixth Circuit.

Argued March 23, 1995.

Decided Aug. 1, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 10, 1995.

Thomas M. Bauer, Asst. U.S. Atty., Akron, OH (argued and briefed), for plaintiff-appellee.

Charles E. Fleming, Federal Public Defender's Office, Cleveland, OH (argued and briefed), for defendant-appellant.

Before: JONES and BATCHELDER, Circuit Judges; JOINER, District Judge.*

JOINER, District Judge.

Defendant Jerry Gillespie contends that the district court erred in denying his motion for a new trial based on the fact that a juror brought a dictionary into the deliberation room and read the definition of "reasonable." The district court fully investigated the possibility that Gillespie was prejudiced by the juror's use of the dictionary, and properly concluded that the jury's verdict was based on the jury charge rather than the dictionary definition of reasonable. Finding no abuse of discretion in the court's denial of Gillespie's motion, we affirm.

## I.

Gillespie was charged with robbing the First National Bank in Akron of $92,000, and with using a firearm during and in relation to that robbery. At the conclusion of the trial, the court instructed the jury that a reasonable doubt

is one based upon reason and common sense; that kind of doubt which would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, then, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own personal affairs.

No challenge is made to this instruction.

An hour and one half after they retired to deliberate, the jury returned with two questions, requesting that the court (1) more clearly describe reasonable doubt and (2) explain whether aiding and abetting would automatically make Gillespie guilty of armed robbery. The court directed the jury to consult the instructions, and declined to further address the jury's questions. Because the hour was late, the court discharged the jury for the evening, admonishing them, however, that they were not to think or talk about the case.

The jurors resumed their deliberation the following morning, and informed the court an hour later that they had reached a guilty verdict on both counts. Before the jury was discharged, the court was informed that a dictionary had been found in the jury room. The court conferred with counsel, and agreed that the jury should be interrogated regarding its possible use of the dictionary, starting with the foreman. Defense counsel suggested that the court question the foreman outside of the presence of the other jurors, but the court opted to have the entire panel present. Defense counsel did not object.

The foreman confirmed that a member of the jury had brought a dictionary into the deliberation room that morning, and that the juror had read aloud the definition of "reasonable."[1] The foreman stated, however, that the jury did not use the dictionary to

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1. The dictionary defined reasonable as
   1a: agreeable to reason [˜ theory] b: not extreme or excessive [˜ requests] c: MODER-ATE, FAIR [a ˜chance] [a ˜price] d: INEXPENSIVE 2a: having the faculty of reason b: possessing sound judgment
   (App. 68.)

reach its verdict, and did not even discuss the dictionary definition after it was read.

The juror who brought the dictionary in stated that she had consulted it the previous evening, and that it had "just clarified something to me." This juror stated, however, that the jury discussed the issues further that morning, and that the dictionary had no bearing on what she decided.

THE COURT: And did you make [the decision] on the basis of the definitions contained in the charge or in the dictionary itself?

[JUROR]: In the charge, definitely. There is no question.

Defense counsel requested that the other jurors be questioned, but did not request that each juror be questioned outside of the presence of the others. The court questioned the jurors, and ascertained that they either had not heard the definition, or, if they had heard it, had not paid attention to it and had not relied on it. One juror stated that "[d]uring the reading of the charge is the only time that everyone was quiet, listening to one person read anything." Another said that the jurors read the charges thoroughly that morning and "discussed each step and came upon agreement of each step, and re-read and reread the different definitions. And I believe that's what makes the difference." The court concluded its inquiry by asking the jurors whether, on their oath as jurors, they relied only on the definitions in the jury charge and not on the dictionary or any outside source. Each juror responded affirmatively.

Defense counsel noted his exception to the fact that the court did not question each juror outside of the presence of the others. The court then offered counsel the opportunity to do so, but defense counsel declined, stating that the jurors likely were committed to the responses they already had given. The court accepted the verdict, and denied counsel's contemporaneous motion for a mistrial and subsequent motion for a new trial. In ruling on the latter motion, the court found that the jury had not substituted the dictionary definition of reasonable for the definition contained in the charge, and reject-ed the contention that its method of interrogating the jury was inappropriate.

## II.

A jury's use of a dictionary to define a relevant legal term is error, but it is not prejudicial per se. *United States v. Griffith,* 756 F.2d 1244, 1251–52 (6th Cir.), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985).

> When a jury makes unauthorized use of a dictionary, the trial judge should determine whether the jury *actually substituted the dictionary definition* of a legal term for that given in the instructions. *If* any jurors substituted the dictionary definition, the court should determine *whether any use of the dictionary definition resulted in prejudice to the defendant.* After the judge makes the required investigation, the decision whether to grant a new trial should be reviewed only for abuse of discretion.

*Id.* at 1252 (citations omitted; emphasis added). In reaching its decision, *Griffith* followed *United States v. Pennell,* 737 F.2d 521 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985), where it had held that a defendant claiming prejudice due to a third party's unauthorized communication with the jury has the burden of proving that prejudice resulted from that contact, and, further, that the jurors' testimony regarding the effect of the contact is not inherently suspect. " '[O]ne who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter.' " *Id.* at 533 (quoting *Smith v. Phillips,* 455 U.S. 209, 217 n. 7, 102 S.Ct. 940, 946 n. 7, 71 L.Ed.2d 78 (1982)).

This court has addressed the problems posed by a jury's use of a dictionary during deliberations in cases in which the dictionary was discovered before the jury had returned its verdict. In *Griffith,* the court immediately instructed the jury to disregard anything they had read in the dictionary, and, after the verdicts were returned, individually questioned each juror in chambers to ascertain whether the dictionary had played a role in the juror's determination. This court af-

firmed the convictions, relying on the district court's finding that none of the jurors had relied on the dictionary in reaching their verdicts, and stating further that the defendants' claim of prejudice was undercut by the "veritable mountain" of evidence against them.

In *United States v. Turner*, 936 F.2d 221 (6th Cir.1991), the district court had followed a different procedure. Upon learning that a dictionary had been found in the jury room, the court summoned the jury and instructed them that they had improperly consulted the dictionary and were to disregard any definition they had read. The court further instructed the jury that if they had reached a verdict on any count through the use of a dictionary definition, they were to re-deliberate on that count using the common meaning of the words. This court affirmed the court's denial of the defendants' motion for a mistrial, despite noting that there was "compelling evidence" that the jurors probably used the dictionary to obtain definitions of legal terms in their initial deliberations. The district court, however, attempted to rectify the problem according to the teachings of *Griffith*, even if it did not use the procedures outlined in that case.

> Instead of determining whether the jury had substituted a dictionary term for a legal term, the judge simply instructed the jury to *not* use the dictionary definition and sent them back to deliberate. He did ask, however, if any juror could not use the normal common-sense meaning of the words in an attempt to guard against potential prejudice. Because the trial judge took the necessary steps to insure against any potential prejudice resulting from the jury's use of the dictionary, his decision not to grant a mistrial was not an abuse of discretion.

936 F.2d at 226–27 (emphasis in original).

■ Several points emerge from these cases. First, the court should determine whether the jury actually used the dictionary definition to reach their verdict. Second, a juror's declaration at the hearing exploring these questions is not inherently suspect. Third, if members of the jury in fact used the dictionary definition, the defendant must prove that he was prejudiced thereby; prejudice is not presumed. Finally, there is no magic procedure the court must follow when informed that the jury may have used a dictionary. The trial judge has extensive discretion in devising procedures to ensure that the jury uses the court's instructions, rather than a dictionary's definition, in reaching a verdict.

■ Application of these principles to Gillespie's claim of error requires the conclusion that the trial court did not abuse its discretion in denying his motion for a new trial. The court questioned all of the jurors, and each one confirmed that the dictionary definition played no role in his or her verdict. The jurors did not discuss the dictionary definition, and listened quietly and attentively only when the jury charge was read, not when the dictionary definition was read. Gillespie contends that we should upset the district court's finding that the jurors did not rely on the dictionary definition, based solely on the fact that the jurors were questioned together, thus possibly pressured to present a united front. However, the jurors' denial that they were influenced by the dictionary is not inherently suspect, and we decline to second-guess the trial court's evaluation of the jurors' demeanor and credibility.

Faced with the disturbing report that a juror had brought a dictionary into the deliberation room, Judge Bell promptly undertook a thorough and effective investigation to determine whether the jury's verdict was affected thereby. He concluded that the jury had not relied on the dictionary, and this conclusion is amply supported by the record. We find no abuse of discretion in the procedure employed or the result reached.

**AFFIRMED.**