OPINION OF THE COURT
Shirley Werner Kornreich, J.
This is a residential summary holdover proceeding in which *601 petitioner seeks to recover a rent-controlled apartment, renting for $56.60 per month. The tenant of that apartment has died, and respondent alleges that she was the wife of the deceased tenant, had lived with him in the apartment since the inception of their April 2, 1992 marriage and succeeded to the apartment upon his death in December 1995. The issue was tried by jury before me. The jury found that respondent had established, by a preponderance of the credible evidence, that she had resided in the apartment as her primary residence from the inception of her marriage to the tenant until his death. Petitioner then moved, pursuant to CPLR 4404 (a): (1) for a judgment notwithstanding the verdict; (2) to set the verdict aside as against the weight of the evidence; (3) to set the verdict aside due to an error in the court’s charge; and (4) to set aside the verdict due to juror misconduct in that an attorney who sat on the jury improperly and wrongly informed the panel that as a legal principle, there is a presumption that spouses share a common residence, that the burden, therefore, was upon the landlord to prove otherwise and that if the jury could not decide the issue, they were to rule in favor of the tenant.
By written opinion, the court denied petitioner’s motion for a judgment notwithstanding the verdict and to set the verdict aside due to an alleged error in the court’s instruction. The court, however, directed that a hearing be held in regard to the alleged juror misconduct. Petitioner’s motion to set the verdict aside as against the weight of the evidence was held in abeyance pending the outcome of the hearing.
Fearful of juror harassment and tampering, the chilling of frank jury deliberation and verdict instability, our courts have long held that a juror may not impeach his own verdict. (Mattox v United States, 146 US 140 [1892]; McDonald v Pless, 238 US 264 [1915]; Kaufman v Eli Lilly & Co., 65 NY2d 449, 460 [1985]; Alford v Sventek, 53 NY2d 743, 744 [1981]; People v De Lucia, 20 NY2d 275, 277-279 [1967].) The one exception to this rule occurs when deliberations are affected by matter extraneous to the record. (Tanner v United States, 483 US 107, 117 [1987]; Mattox v United States, supra; Alford v Sventek, supra; People v Brown, 48 NY2d 388, 393 [1979]; People v De Lucia, supra.) This exception is allowed because such outside matter impugns the right to confrontation, is inherently prejudicial[1] and is objective and easily proved without invading the mental *602 processes of the jurors. (Mattox v United States, supra; People v De Lucia, supra, at 278-279.)
In directing a hearing on the issue of juror misconduct, this court determined that if, in fact, the one attorney on the instant jury instructed the remaining jurors on the law, such instruction would be an “outside influence.”[2] Although the court was unable to find any case directly on point, there is an abundance of case law finding impeachable a jury’s use of information outside the record to define a legal term. (See, Fitzgibbons v New York State Univ. Constr. Fund, 177 AD2d 1033 [4th Dept 1991] [new trial ordered where juror who had experience with workers’ compensation told other jurors of benefits plaintiff would receive from workers’ compensation and persuaded others of plaintiffs eligibility for benefits; court found juror had injected extrajudicial facts into record and had improperly introduced law, other than that charged by Judge, into case]; Maslinski v Brunswick Hosp. Ctr., 118 AD2d 834 [2d Dept 1986] [verdict set aside after hearing where juror copied definition of malpractice from medical dictionary and read it to other jurors during deliberation]; United States v Williams-Davis, 90 F3d 490 [DC Cir 1996], cert denied 519 US 1128 [1997] [forewoman’s use of dictionary to define “enterprise” in RICO trial was misconduct but was found not to be prejudicial]; United States v Gillespie, 61 F3d 457 [6th Cir], reh denied [1995] [use of dictionary to define “reasonable” was error]; United States v Estrada, 45 F3d 1215 [8th Cir], cert granted, judgment vacated on other grounds 516 US 1023 [misconduct occurred where juror contacted Public Defender to inquire about need for search warrant in subject case]; United States v Martinez, 14 F3d 543 [11th Cir 1994] [where juror informed others that defendant faced 160 years’ imprisonment as sentence and jury used dictionary to define legal terms, defendant was prejudiced and reversal required]; United States v Console, 13 F3d 641, 665 [3d Cir 1993], cert denied sub nom.Curcio v United States, *603 511 US 1076 [1994] [juror’s discussion of definition of RICO with sister-in-law who was attorney and her repeating definition to jury created presumption of prejudice]; Mayhue v St. Francis Hosp., 969 F2d 919 [10th Cir 1992] [new trial granted where dictionary definitions of legal terms were used during deliberation]; United States v Dynalectric Co., 859 F2d 1559, 1582 [11th Cir 1988], cert denied 490 US 1006 [1989] [juror’s use of notes from health law class during deliberations constituted improper extrinsic evidence]; United States v Cheyenne, 855 F2d 566 [8th Cir 1988] [jury’s use of pocket dictionary to define legal terms, during deliberation, warranted hearing]; Bayramoglu v Estelle, 806 F2d 880 [9th Cir 1986] [misconduct for juror to contact law librarian to inquire about legal issues]; United States v Duncan, 598 F2d 839 [4th Cir], cert denied 444 US 871 [1979] [misconduct for juror to use dictionary definition of legal terms].)
Additionally, juror resort to extraneous information is error even when that information does not stem from an outside source but rather comes from a juror privy to items outside common knowledge. (Fitzgibbons v New York State Univ. Constr. Fund, 177 AD2d 1034, supra; Ryan v Orange County Fair Speedway, 227 AD2d 609 [2d Dept 1996] [new trial ordered on damages where juror who held self out as more knowledgeable than others on issue of personal injuries disseminated information to jury on issue]; People v Edgerton, 115 AD2d 257, 258 [4th Dept 1985], lv denied 67 NY2d 882 [1986] [“The circumstance that extrarecord facts come from a juror rather than from a stranger to the jury is immaterial. 6(I)t is the “nature of the matter and its probable effect on a hypothetical average jury,” not the source of information or the locus of its communication, which determines whether the defendant has been prejudiced.’”].) As explained by Judge Friendly, as cited in United States v Swinton (75 F3d 374, 381 [8th Cir 1996]), “ ‘There is no rational distinction between the potentially prejudicial effect of extra-record information which a juror enunciates on the basis of the printed word and that which comes from his brain.’ ” Based on this reasoning, instruction on the law by an attorney sitting on a jury is an outside influence open to impeachment.
Following publication of the court’s opinion setting the matter down for a hearing, a reporter for the New York Observer contacted a number of the jurors, interviewed them regarding their deliberations and published an article on the subject. The published article was brought to the attention of the court and *604 counsel. The jurors’ posttrial statements to the reporter were not considered by the court in determining this motion. (See, United States Football League v National Football League, 644 F Supp 1040 [SD NY 1986], affd 842 F2d 1335 [1988].)
The hearing at which each of the jurors was questioned was held over a two-day period. The hearing, in essence, had two goals — to determine whether there had been an outside intrusion into jury deliberation and, if so, to analyze whether the intrusion affected the jury’s deliberation and verdict. (See, United States v Olano, 507 US 725, 738-739 [1993]; United States ex rel. Buckhana v Lane, 787 F2d 230, 238 [7th Cir 1986].) Since New York case law provides only broad parameters in regard to the procedure to be employed at such a hearing,[3] the court turned to the large body of Federal case law for guidance as to the conduct of the hearing. Specifically, the court looked to rule 606 (b) of the Federal Rules of Evidence, a rule which, as noted by the New York Court of Appeals in Sharrow v Dick Corp. (supra, 86 NY2d, at 60-61), has been adopted by the majority of jurisdictions and is consonant with the underlying principles of New York case law.
Rule 606 (b) provides: “Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon that or any other juror’s mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror’s mental processes in connection therewith, except that a juror *605 may testify on the question whether extraneous prejudicial information was improperly brought to * * * bear upon any juror. Nor may a juror’s affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.” This rule has been interpreted by the courts to limit inquiry to a determination of the extent to which extraneous material was introduced, if at all, into the jury room and to prohibit all inquiry into the subjective effect of the extraneous information on the verdict or on the jury’s deliberations. (United States v Cheek, 94 F3d 136, 143 [4th Cir 1996]; United States v Berry, 92 F3d 597, 601 [7th Cir 1996]; United States ex rel. Buckhana v Lane, 787 F2d 230, 238, supra; United States v Duncan, 598 F2d 839, 866 [4th Cir 1979], supra; United States v Caro-Quintero, 769 F Supp 1564, 1570 [CD Cal 1991], affd without opn sub nom. United States v Bernabe-Ramirez, 42 F3d 1403 [9th Cir 1994]; Urseth v City of Dayton, 680 F Supp 1084, 1089 [SD Ohio 1987]; see, Mattox v United States, 146 US 140, supra [juror may testify as to existence of extraneous influence but not as to how that influence operated upon his mind]; see also, People v Holmes, 69 Ill 2d 507, 372 NE2d 656 [1978] [juror may testify as to outside influence but not as to mental processes]; State v Kociolek, 20 NJ 92, 100, 118 A2d 812, 816 [1955] [Brennan, J.] [juror may testify as to extraneous influence to avoid miscarriage of justice but may not testify as to effect of this matter on mental processes].)
Beyond the prohibition of rule 606 (b), the conduct of the hearing is left to the discretion of the court. (United States v Campbell, 684 F2d 141, 151 [DC Cir 1982].) The initial burden rests upon the moving party to demonstrate that extrajudicial material was received by the jury. (United States v Cheek, 94 F3d 136, 141, supra [movant bears minimal burden of introducing competent evidence that outside influence was more than innocuous intervention]; Owen v Duckworth, 727 F2d 643, 646 [7th Cir 1984]; United States v Caro-Quintero, 769 F Supp 1564, 1573, supra [movant must prove jury exposed to outside influence by preponderance of evidence]; see, King v United States, 576 F2d 432, 438 [2d Cir 1978], cert denied 439 US 850 [1978] [to authorize postverdict inquiry into deliberations, movant must demonstrate need for hearing by “clear evidence”, “strong evidence”].)
Once the moving party has met this burden, a number of Circuits, then, presume prejudice and place a heavy burden upon the party defending the verdict to prove otherwise. *606 (United States v Cheek [4th Cir], supra; United States v Swinton, 75 F3d 374, 382 [8th Cir], supra; United States v Martinez, 14 F3d 543, 550 [11th Cir], supra; Mayhue v St. Francis Hosp., 969 F2d 919, 922 [10th Cir], supra; Owen v Duckworth, 727 F2d 643, 646 [7th Cir], supra; Herring v Blankenship, 662 F Supp 557, 564 [WD Va 1987]; see, Remmer v United States, 347 US 227 [1954]; People v Edgerton, 115 AD2d 257, 258-259, supra.) Some courts, however, distinguish between civil and criminal cases refusing to presume prejudice in civil actions and requiring a showing that the extraneous matter prejudiced the unsuccessful party. (Wolff v Brown, 128 F3d 682, 686 [8th Cir 1997]; but see, Haley v Blue Ridge Transfer Co., 802 F2d 1532, 1535 [4th Cir 1986] [doctrine of presumed prejudice applies as forcefully in civil as in criminal cases]; Rinker v County of Napa, 724 F2d 1352, 1354 [9th Cir 1983] [presumption of prejudice applied since integrity of jury system no less to be desired in civil as in criminal cases].) Others distinguish between the introduction of extrajudicial evidence and legal instruction, holding that where the jury supplemented the court’s charge with extraneous material, prejudice is not presumed and the moving party must show the extraneous matter distorted the jury’s understanding of the law to its prejudice. (United States v Berry, 92 F3d 597, 600 [7th Cir], supra; United States v Gillespie, 61 F3d 457, 459 [6th Cir], supra; United States v Cheyenne, 855 F2d 566, 568 [8th Cir], supra; but see, United States v Martinez, 14 F3d 543, 550 [11th Cir], supra; United States v Console, 13 F2d 641, 665 [3d Cir], supra; Mayhue v St. Francis Hosp., 969 F2d 919 [10th Cir], supra.)
Nonetheless, in all jurisdictions, the ultimate question remains the same — did the intrusion affect the deliberations and verdict? (United States v Olano, 507 US 725, 739, supra; Alford v Sventek, 53 NY2d 743, 745, supra; People v Brown, 48 NY2d 388, 394, supra.) This latter question is to be resolved by the court who must determine the probable effect the information would have on the mind of an objective, typical juror. (Owen v Duckworth, supra; United States v McKinney, 429 F2d 1019, 1030 [5th Cir], affd on reh 434 F2d 831 [1970], cert denied 401 US 922 [1971]; Lanza v Poretti, 537 F Supp 777, 782 [ED Pa 1982].) Factors to be considered in making this determination are: (1) whether and in what manner the extrinsic material was received by the jury; (2) the length of time it was available to the jury; (3) whether it was discussed and considered by the jury; (4) whether it was introduced before a verdict was reached and at what point; and (5) whether it was *607 reasonably likely to affect the verdict. (United States v Swinton, 75 F3d 374, 382, supra; Mayhue v St. Francis Hasp., 969 F2d 919, 924, supra; Bayramoglu v Estelle, 806 F2d 880, 887, supra; United States v Caro-Quintero, 769 F Supp 1564, 1575, supra; see, People v Brown, 48 NY2d 388, 394, supra [court must look to nature of information placed before jury, whether information was material to point at issue and whether its introduction created substantial risk of prejudice].)
In the instant case, the court set forth a procedure by which it alone would question each juror, outside of the hearing of the other jurors, in regard to the alleged misconduct but would permit counsel to question them as to what, if any, contact each juror had had with the reporter from the New York Observer or others and the effect, if any, of the posttrial contact on their present states of mind or testimony. The court solicited questions from counsel but restricted those questions to whether the attorney on the jury had instructed the jury as alleged and, if he had, at what point in the deliberations this had occurred. No questions regarding the effect of such communications, if any, on the jurors’ minds, were permitted.
Of the six jurors, the testimony of four, in some way, supported petitioner’s allegations. All of the jurors stated that they had known that the juror-attorney was a lawyer. The first juror questioned indicated that she had looked to him for guidance and that he had told her, during deliberation and in the hearing of all of the other jurors that, “he felt as a lawyer, if a spouse had succession rights to the apartment * * * [i]t was a natural presumption she’d assume residency of the apartment if he became deceased, if the spouse became deceased.” (Oct. 20, 1997 hearing transcript, at 19.) She testified that he did not specifically say the law required this but that “he might have alluded to that.” (Id., at 20.)
The second juror stated that the juror-attorney had told the jury that the law required the landlord to prove that spouses do not live together. This juror could not recall when during deliberation this was said but believed it was said long before the verdict was written down.
The third juror testified that the juror-attorney told the jury that if they could not make a decision in the case, as a matter of law they had to decide in favor of respondent tenant. This juror further testified that answers on the verdict sheet were changed but could not recall if the changes related to the statement made by the juror-attorney.
The fourth juror to testify was the attorney who had served on the jury. He denied that he instructed the jury on the law. *608 Similarly, the fifth juror to appear testified that the juror-attorney never instructed the jury on any legal principles.
Finally, the sixth juror, who was the dissenting juror and the one who had submitted the affidavit alleging juror misconduct, testified. He recalled that the juror-attorney instructed the jury on the law. Particularly, he testified that the juror-attorney told the jury that the law required “[t]hat if it was fifty-fifty in most people’s minds, they would have to side with the person who lives in the apartment, for the tenant, I guess.” (Dec. 5, 1997 hearing transcript, at 8.) This juror further testified that answers on the verdict sheet were changed. Prior to this occurring, this sixth juror testified, the jury requested re-instruction on the definition of preponderance of the evidence.[4] He also testified that after this reinstruction, the jury began to answer the questions on the verdict sheet, came to a question and again asked the court for something. He then testified that the jury returned to the jury room, continued answering questions but when they reached the final question, the juror-attorney instructed them on the law and the verdict sheet was changed.[5]
Based upon the credible hearing testimony, the court finds that petitioner has demonstrated by clear and convincing evidence that an attorney sitting on the instant jury wrongly instructed the other jurors that the law required the petitioner landlord to prove respondent tenant did not live in the subject, rent-controlled apartment with the tenant of record, before that tenant’s death. Respondent, who then was obligated to establish that this erroneous legal instruction did not affect the deliberations and verdict, has failed to do so.
The sole issue before this jury was the locus of respondent’s residence prior to the tenant of record’s death. The law *609 requires, and the court instructed, that respondent prove that she resided with respondent for the requisite period prior to his demise. The evidence on this issue, recapitulated in detail in the court’s previous opinion, was close, presenting a difficult factual question for the jury to resolve.
The court finds from the credible hearing testimony, that in the midst of deliberation, an attorney sitting on the jury wrongly instructed the jury as to the law on this close question. The hearing testimony considered in conjunction with the verdict sheet demonstrated that the erroneous legal instruction was given before the verdict was rendered, was heard and considered by at least four of the six jurors and the jury changed the verdict sheet from one favoring petitioner to one favoring respondent. The legal information introduced by the one attorney on the jury, clearly, distorted the law. This wrong legal information went to the heart of the case and created a substantial risk of prejudice. The nature of the material placed before the jury and the likelihood of prejudice requires that the verdict be set aside and a new trial ordered.

. As noted by the Court in People v Huntley (87 AD2d 488, 492-493 [4th Dept 1982], affd 59 NY2d 868 [1983]): “deliberations must take their content *602 from the record facts before them, not from external facts brought into the jury room by a juror and thus not screened through the judicial process. When that occurs there is ‘such a probability that prejudice will result that [the verdict] is deemed inherently lacking in due process’ (Estes v Texas, 381 US 532, 542-543).” Accord, Parker v Gladden, 385 US 363 [1966].)

. Since confronted with this issue, in addition to the general charge advising the jurors that they are the judges of the fact and I am the sole judge of the law, I instruct them, both in my preliminary charge and in my closing instruction, that even if one of their members is an attorney, they cannot accept the law from him or her. I tell them that as jurors, they are all equal in the jury room, even lawyers, and their role is to find the facts, not determine the law. I emphasize that the law must come from me alone.

. The mandated hearing is to be carried out “without infringing upon the secrecy or integrity of the jury’s deliberations.” (Sharrow v Dick Corp., 86 NY2d 54, 61 [1995], citing People v Pickett, 61 NY2d 773 [1984].) In determining whether reversal is in order, the New York courts examine the nature of the extraneous matter and whether a substantial risk of prejudice is created. (People v Brown, 48 NY2d 388, 394 [1979], supra; accord, Alford v Sventek, 53 NY2d 745, supra; People v Magnano, 175 AD2d 639, 640 [4th Dept 1991], lv denied 79 NY2d 860 [1992]; Maslinski v Brunswick Hosp. Ctr., 118 AD2d 835, supra; People v Edgerton, 115 AD2d 257, 258, supra; People v Huntley, 87 AD2d 488, 492, supra; see, Ryan v Orange County Fair Speedway, 227 AD2d 609, 611, supra [probability that juror misconduct impacted on verdict requires new trial]; Nicolla v Fasulo, 161 AD2d 966 [3d Dept 1990] [where juror read information from PDR and based his opinion on that information court refused to reverse since expert witness had testified to information in PDR at trial and, thus, extraneous information read by juror was cumulative and harmless]; but see, People v De Lucia, 20 NY2d 255, 280, supra [jury visit to scene and reenactment of incident in criminal case constitutes inherent prejudice requiring reversal]; People v Redd, 164 AD2d 34, 39-40 [1st Dept 1990] [unauthorized visit to scene in criminal case constitutes inherent prejudice sufficient to warrant new trial].)

. The first jury note, sent at 12:40 p.m., asked for the exhibits. The second note, sent at 3:25 p.m., asked for clarification of the term “fair preponderance of credible evidence.” The third note, sent at 4:20 p.m., requested read-back of testimony. Similarly, the fourth note, sent at 4:40 p.m., asked for further testimony. The court believes the fourth note came while the court reporter was searching for the testimony requested in the third note and, therefore, the testimony requested in both notes was read to the jury at the same time.

. The verdict sheet contained five questions. The first question which dealt with petitioner landlord’s prima facie case was stipulated to by the parties. The jury, thus, only had to determine the answers to the remaining four questions — all of which considered respondent tenant’s assertion that she resided in the subject apartment as her primary residence during the lifetime of the tenant of record. Respondent had the burden of proof as to these questions. The answers to the questions, indeed, were crossed out and changed.